IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | | |
|---|---|---|
| JOHN P. DUNBAR, | ) | CV. NO. 07-00107 DAE-BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| COUNTY OF MAUI, | ) | |
| MAUI POLICE DEPARTMENT, | ) | |
| NELSON JOHNSON, | ) | |
| THOMAS MARTINS, | ) | |
| PAUL TAKAYAMA, | ) | |
| ALAN ARAKAWA, | ) | |
| THOMAS PHILLIPS, | ) | |
| DAVELYNN TENGAN, | ) | |
| WILLIAM SLOPER, | ) | |
| BEN HERREN, | ) | |
| KIMBERLY A.B. SLOPER,, | ) | |
| BRENT K. OSTERSTOCK, | ) | |
| MARIE J. KOSEGARTEN, | ) | |
| JOHN AND JANE DOES 1-10, | ) | |
| DOE GOVERNMENT AGENCIES | ) | |
| 1-10, DOE CORPORATIONS 1-10, | ) | |
| AND OTHER DOE ENTITIES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS
COUNTY OF MAUI, MAUI POLICE DEPARTMENT, NELSON JOHNSON,
THOMAS MARTINS, PAUL TAKAYAMA, ALAN ARAKAWA, THOMAS
PHILLIPS, AND BRENT K. OSTERSTOCK'S MOTION FOR SUMMARY
JUDGMENT; ORDER DENYING DEFENDANTS' MOTION TO STRIKE
PLAINTIFF'S SUPPLEMENT TO HIS OPPOSITION

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for

disposition without a hearing.  After reviewing Defendants County of Maui

("County"), Maui Police Department ("MPD"), Nelson Johnson, Thomas Martins,

Paul Takayama, Alan Arakawa (misidentified as "Alan Arakaya"), Thomas

Phillips, and Brent Osterstock's (collectively, "Defendants")  motion and the

supporting and opposing memoranda, the Court GRANTS IN PART and DENIES

IN PART Defendants' Motion for Summary Judgment ("MSJ") (Doc. # 74).  The

Court GRANTS the Motion with respect to all of Plaintiff's claims based on the

August 5, 2004 arrest, the September 29, 2004 arrest, the February 28, 2005 trial,

and the December 21, 2006 arrest.  The Court DENIES Defendants' motion with

respect to all of Plaintiff's claims based on the August 29, 2005 arrest.

Furthermore, the Court DENIES Defendants' Motion to Strike

Plaintiff's Supplement to his Opposition to Defendants' Motion for Summary

Judgment ("Motion to Strike") (Doc. # 90).

## BACKGROUND

On August 5, 2004, Plaintiff was arrested (the "August 5, 2005 arrest") for disorderly conduct by Defendant MPD Officers Nelson Johnson and Thomas Martins ("Officer Johnson" and "Officer Martins," respectively). Plaintiff was subsequently indicted by a grand jury for Harassment, Escape in the Second Degree, and Resisting Arrest and a warrant was issued for Plaintiff's arrest on September 20, 2004 (the "September 20, 2004 warrant"). On September 29, 2004, Plaintiff was arrested (the "September 29, 2004 arrest") pursuant to this warrant. On February 28, 2005, the first day of a two-day bench trial before Judge Joel E. August in the Circuit Court of the Second Circuit (the "February 28, 2005 trial"), the court granted Plaintiff's motion for a judgment of acquittal on the charges of Harassment and Resisting Arrest. On March 1, 2005, Plaintiff was found guilty of Attempted Escape in the Second Degree and judgment was entered on June 29, 2005. Plaintiff was sentenced to five years probation and his conviction was affirmed on appeal on October 18, 2006.

On August 29, 2005, MPD Officer Defendant Paul Takayama ("Officer Takayama") arrested Plaintiff (the "August 29, 2005 arrest") pursuant to a bench warrant dated October 13, 2004 (the "October 13, 2004 warrant") for Plaintiff's violation of a September 27, 2004 court order. The October 13, 2004

warrant was apparently related to the February 28, 2005 trial.  Plaintiff was

arrested again on December 21, 2006 (the "December 21, 2006 arrest") for

violating the conditions of his probation by traveling outside of the United States

without the permission of the probation department.

On March 1, 2007, Plaintiff, pro se, filed his Complaint.  Plaintiff

generally alleges that Defendants conspired to punish him for exercising his First

Amendment rights in criticizing MPD and for making negative statements about

Defendant MPD Chief Phillips ("Chief Phillips").  Specifically, Plaintiff claims

that Defendants violated his constitutional rights under the First, Fourth, Fifth,

Sixth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983.

With regard to his four arrests, Plaintiff claims that the August 5, 2004

arrest by Officers Johnson and Martins constituted the State law claims of assault

and battery due to excessive force, trespass to property, false arrest and

imprisonment, negligent and intentional infliction of emotional distress, and

negligence.

Plaintiff further asserts that he was falsely arrested and imprisoned on

September 29, 2004, violating his constitutional rights.  Plaintiff alleges that

Defendant Brent Osterstock ("Osterstock") maliciously prosecuted him in the

February 28, 2005 trial.

4

As for the final two arrests, Plaintiff claims that Officer Paul Takayama falsely arrested and imprisoned him on August 29, 2005.  Plaintiff also claims that he was falsely arrested and imprisoned on December 21, 2006.

Plaintiff avers that these four arrests took place with the knowledge of Chief Phillips and Defendant Mayor Alan Arakawa ("Mayor Arakawa") and, resultingly, the County of Maui is liable for damages based on a failure to train MPD officers in proper arrest procedures.

On April 8, 2008, Defendants filed the instant MSJ.  On May 5, 2008, Plaintiff filed his Opposition to the Motion for Summary Judgment. ("Opposition") (Doc. # 83), to which Defendants replied on May 22, 2008 (Doc. # 87).  On May 23, 2008, Plaintiff filed a Supplement to his Opposition to Defendants' Motion for Summary Judgment ("Supplement") (Doc. # 89).  On May 28, 2008, Defendants filed their Motion to Strike.

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corrections, 419 F.3d 885, 891 (9th

Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A

main purpose of summary judgment is to dispose of factually unsupported claims

and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to

demonstrate facts to establish what will be an essential element at trial.  See id. at

323.  A moving party without the ultimate burden of persuasion at trial has both

the initial burden of production and the ultimate burden of persuasion on a motion

for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d

1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to

identify for the court those "portions of the materials on file that it believes

demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv.,

Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing

Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the

nonmoving party "must set forth specific facts showing that there is a genuine

issue for trial" and may not rely on the mere allegations in the pleadings.  Porter,

419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986)).  In setting forth "specific facts," the nonmoving party may not meet its

burden on a summary judgment motion by making general references to evidence

without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence'" must be produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  Id.  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.  T.W. Elec. Serv., 809 F.2d at 631.

7

When a plaintiff appears pro se, the court has an obligation to construe the plaintiff's complaint liberally.  See Bernhardt v. Los Angeles County, 339 F.3d 920, 925 (9th Cir. 2003); Jackson v. Carey, 353 F.3d 750, 757 (9th Cir. 2003) (same).  Pro se plaintiffs in a civil rights action must be afforded the benefit of any doubt.  See Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 623 (9th Cir. 1988). "A pro se litigant must be given leave to amend his or her complaint unless it is 'absolutely clear that the deficiencies of the complaint could not be cured by amendment.'"  Id.  "[B]efore dismissing a pro se civil rights complaint for failure to state a claim, the district court must give the plaintiff a statement of the complaint's deficiencies."  Id.

DISCUSSION

I.  Defendants' MSJ

Defendants argue that all of Plaintiff's claims must be dismissed. Specifically, Defendants argue that all claims based on the August 5, 2004 arrest, the September 29, 2004 arrest, and the trial that took place on February 28, 2005 are time-barred by the applicable statute of limitations.  Alternatively, Osterstock argues that he has absolute immunity to Plaintiff's claim of malicious prosecution stemming from the February 28, 2005 trial.  Defendants further contend that the August 29, 2005 and December 21, 2006 arrests were pursuant to valid warrants

and, as a result, summary judgment is appropriate.  Finally, Defendants assert that

Plaintiff cannot prove that MPD Officers were inadequately trained and, therefore,

Plaintiff's claims must be dismissed.

    A.  <u>Statute of Limitations</u>

        Defendants argue that Plaintiff's State law claims of false arrest and

imprisonment, intentional and negligent infliction of emotional distress, assault and

battery, and trespass to property, in addition to Plaintiff's § 1983 claims, all of

which stem from the August 5, 2004 and September 29, 2004 arrests, are time-

barred by the statute of limitations because Plaintiff filed his Complaint more than

two years after these arrests.  Plaintiff concedes that a two-year statute of

limitations period applies to his claims, but argues that his claims did not begin to

run at the time of his arrest but, rather, after his trial was completed on March 1,

2005.

        In Hawai`i, the statute of limitations for claims for damage or injury to

persons or property is two years.  Haw. Rev. Stat. § 657-7; <u>see</u> <u>Linville v. Hawaii</u>,

874 F. Supp. 1095, 1104 (D. Haw. 1994) (Hawai`i's two-year statute of limitation

applies to claims of negligent or intentional infliction of emotional distress and

negligence in employment discrimination cases); <u>Kahale v. City & County of</u>

Honolulu, 104 Haw. 341, 343 (Haw. 2004) (Hawai`i's two-year statute of limitations applies to claims of emotional distress).

"Because § 1983 does not contain a statute of limitations, federal courts apply the forum state's statute of limitations for personal injury claims." Johnson v. State of Cal., 207 F.3d 650, 653 (9th Cir. 2000); see also Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd., 509 F.3d 1020, 1026 (9th Cir. 2007) ("It is well-established that claims brought under § 1983 borrow the forum state's statute of limitations for personal injury claims").  Civil rights claims brought pursuant to 42 U.S.C. § 1983 are, therefore, subject to the two-year statute of limitations under Hawai`i law.  Pele Defense Fund v. Paty, 837 P.2d 1247, 1259 (Haw. 1992) ("the two-year statute of limitations set forth in HRS § 657-7 governs § 1983 actions, rather than the six-year statute of limitations set forth in HRS § 657-1(4)").  The court must look to federal law, however, to determine when a § 1983 claim accrues.  Wallace v. Kato, 127 S. Ct. 1091, 1095 (2007) ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law" (emphasis in original)).

In Wallace, the Supreme Court recently held that the statute of limitations for a § 1983 claim based upon a claim of false arrest or imprisonment begins to run on the date that individual appears before a judge and is bound over

10

for trial.  127 S. Ct. at 1097.  Using the term false imprisonment to include false or

unlawful arrest, the Supreme Court determined that the time of being held over for

trial was the appropriate start date because

> false imprisonment consists of detention without legal
> process, a false imprisonment ends once the victim
> becomes held pursuant to such process-when, for
> example, he is bound over by a magistrate or arraigned
> on charges.  Thereafter, unlawful detention forms part of
> the damages for the "entirely distinct" tort of malicious
> prosecution, which remedies detention accompanied, not
> by absence of legal process, but by wrongful institution
> of legal process.

Id. at 1096 (citations omitted).  The Supreme Court specifically rejected the

argument that the statute of limitations should begin to run on the date that the

individual was released from custody or when the charges were dismissed.  Id.

Here, the parties agree that Plaintiff was first arrested on August 5,

2004.  On September 20, 2004, Judge August issued a bench warrant for Plaintiff's

arrest.  Although neither party gives the date of Plaintiff's initial court appearance,

the parties again agree that Plaintiff was arrested pursuant to this warrant on

September 29, 2004 and, furthermore, that his trial began on February 28, 2005.

Clearly, Plaintiff's initial court appearance occurred somewhere between these

dates.  Accordingly, more than two years passed between Plaintiff's initial

appearance and the filing of his Complaint on March 1, 2007.  The Court,

11

therefore, GRANTS Defendants' MSJ with respect to Plaintiff's § 1983 claims and State law claims of assault, use of excessive force, trespass to property, false arrest and false imprisonment based upon the August 4, 2005 and September 29, 2004 arrests.

As Officers Johnson and Martins were involved only in the August 5, 2004 arrest, the Court hereby DISMISSES them from this action because there are no pending claims pending against them.

Plaintiff's claims arising out of the August 29, 2005 and December 21, 2006 arrests and imprisonment, however, are not time-barred because Plaintiff's filing of the Complaint on March 1, 2007 falls within the two-year statute of limitations period.

B. Osterstock's Claim for Absolute Immunity

Osterstock claims he has absolute immunity regarding Plaintiff's claim of malicious prosecution because he acted within the scope of his prosecutorial duties.  In opposition, Plaintiff contends that Osterstock investigated, advised the police department, and otherwise participated in the "plan" to retaliate against him, thus entitling him only to qualified immunity.

"[A]bsolute immunity precludes the imposition of any liability on the alleged wrongdoers, regardless of how wrongful that person's conduct may have

12

been." Seibel v. Kemble, 631 P.2d 173, 177 (Haw. 1981).  Whether a person is

entitled to absolute immunity is not analyzed merely by their position title, but

instead rests on the type of function that they are performing.  Briscoe v. LaHue,

460 U.S. 325, 342 n. 28 (1983).  With respect to prosecutors, the Supreme Court

has held that "in initiating a prosecution and in presenting the State's case, the

prosecutor is immune from a civil suit for damages under § 1983."  Imbler v.

Pachtman, 424 U.S. 409, 430 (1976).  Indeed, "it is well established that a

prosecutor has absolute immunity for the decision to prosecute a particular

case . . . .  In addition, a prosecutor's professional evaluation of a witness is entitled

to absolute immunity even if that judgment is harsh, unfair or clouded by personal

animus."  Botello v. Gammick, 413 F.3d 971, 976 (9th Cir. 2005) (quotation and

citation omitted).

In contrast, a prosecutor is entitled to only qualified immunity for the

performance of administrative or investigative functions.  Id.  Moreover,

prosecutors do not have absolute immunity for their advice to police officers

during the investigative phase of a criminal case, or when performing acts which

are generally considered functions of the police.  Burns v. Reed, 500 U.S. 478, 493

(1991); Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993) ("When a prosecutor

performs the investigative functions normally performed by a detective or police

officer, it is neither appropriate nor justifiable that, for the same act, immunity

should protect the one and not the other" (internal quotation marks omitted)).

> [W]hether a prosecutor benefits from absolute or qualified immunity depends on which of the prosecutor's actions are challenged. The official seeking absolute immunity bears the burden of demonstrating that absolute immunity is justified for the function in question. The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the course of their duties.

Botello, 413 F.3d at 976 (citations omitted).

In the Complaint and in the Opposition, Plaintiff explicitly challenges

Osterstock's decision to: (1) bring charges against him; and (2) use a certain

witness at the grand jury hearing for the indictment. As clearly established above,

these actions are intimately associated with the judicial process and, thus,

Osterstock is absolutely immune for such actions. Plaintiff further alleges that

Osterstock participated in the investigation by advising the police, leading to

Plaintiff's indictment, which is outside of the prosecutor's duty. In his declaration,

Osterstock states: "While I was a Deputy Prosecuting Attorney, I did not conduct

any investigation into John P. Dunbar's case." (Osterstock Decl. at

¶ 5). Plaintiff has not offered any evidence discrediting or debunking Osterstock's

declaration. As such, there is no genuine issue of material fact as to this issue.

14

Accordingly, this Court GRANTS Defendants' MSJ with respect to Plaintiff's malicious prosecution claims to the extent that Plaintiff's § 1983 claim is based on Osterstock's decision to bring charges and use certain witnesses at the hearings.

Since there are no claims pending against Osterstock, the Court hereby DISMISSES him from this action.

C.   False Arrest/Imprisonment Claims

As noted above, the claims based upon the August 29, 2005 and December 21, 2006 arrests are not barred by the statute of limitations.  Regardless, Defendants argue that all claims arising out of these arrests must be dismissed because each arrest was pursuant to a valid warrant, and, further, that Plaintiff cannot prove the arrests and imprisonments were unlawful.

1.   The August 29, 2005 Arrest

Plaintiff was arrested on August 29, 2005, by Defendant Paul Takayama pursuant to a bench warrant more than ten months after it was signed by Judge Ige on October 13, 2004.  Defendants provide a copy of the warrant as evidence to the validity of the arrest.  Plaintiff, however, argues that the warrant was invalid because it pertained to the harassment charge for which he was previously acquitted.

15

In order to prove false arrest or false imprisonment, Plaintiff must prove that 1) the detention or restraint was against his will; and 2) the detention or restraint was unlawful.  Reed v. City and County of Honolulu, 76 Haw. 219, 230 (Haw. 1994).  False arrest and false imprisonment consist of the same elements "because a person who is falsely arrested is at the same time falsely imprisoned." Id.

Defendants claim that the October 14, 2004 bench warrant was valid at the time of the August 29, 2005 arrest but set forth no argument or evidence in support of this proposition.  While Defendants provided this Court with a copy of the warrant, they have not provided a copy of the order Plaintiff allegedly violated. In addition, Defendants do not state what Plaintiff did to allegedly violate this order.  The Court additionally notes that, based upon its careful review of the exhibits provided by Defendants, the report number on the October 13, 2004 warrant appears to match a police report number listed on the September 20, 2004 warrant that was issued pursuant to the indictment against Plaintiff for the August 5, 2004 incident.  This appears to indicate that the October 13, 2004 warrant was associated with the case that went to trial on February 28, 2005.  Defendants offer no explanation for this anomaly.  Instead, the record before it indicates to the Court that MPD acted upon this warrant almost six months after the conclusion of the

16

February 28, 2005 trial.[1]  Accordingly, this Court is unpersuaded that the October 13, 2004 bench warrant remained viable despite not being executed prior to or during the proceedings in the matter in which it was issued.

Defendants do not address this issue directly and, instead, rely on inapposite authority establishing the criteria for determining when a facially valid warrant is lawfully executed.  Baker v. McCollan, 443 U.S. 137 (1979).[2]  The issue here, however, is not under what circumstances an otherwise valid warrant is considered lawfully executed.  Rather, as indicated above, the question is whether a warrant that appears to have been issued in a completed criminal matter retains legal viability notwithstanding entry of final judgment.[3]  Moreover, Plaintiff suggests that Defendant MPD Officer Takayama came onto Plaintiff's property specifically to execute the warrant.  This fact indicates that Officer Takayama

---

[1] The Court acknowledges that final judgment was not entered until June 29, 2005.  This fact, however, only reinforces the Court's doubts about the continued validity of the October 13, 2004 warrant.

[2] In Baker, the plaintiff was stopped by a sheriff after running a red light and a routine warrant check turned up a warrant in the plaintiff's name.  443 U.S. at 141.  Only after the plaintiff had been in jail for three days was his mistaken identity discovered.  Id.  Nonetheless, the Supreme Court held that plaintiff did not state a cognizable constitutional claim despite this deprivation of liberty.  Id. at 144.

[3] Because the parties do not address the legal standard for determining validity of a warrant, the Court does not discuss it here.

17

could have investigated whether the October 13, 2004 warrant was still valid prior to entering Plaintiff's property.

This Court also finds the wording of the October 13, 2004 bench warrant vague. In his declaration, Officer Takayama states that he arrested Plaintiff for "the offense of Contempt of Court." (Takayama Decl. ¶ 3, attached to Defs.' Reply.) According to the warrant, Plaintiff either "wilfully and unlawfully failed to appear, make payment and/or comply with the court's order." (October 13, 2004 Bench Warrant, Ex. G, attached to Defs.' MSJ.) In short, it is unclear what Plaintiff did to be in contempt of court. In light of this lack of clarity and the foregoing discussion on the questionable viability of the warrant, this Court finds that there is a genuine issue of material fact as to whether Plaintiff was falsely arrested. As such, summary judgment on this issue is not appropriate.

2. <u>The December 21, 2006 Arrest</u>

Plaintiff's arrest on December 21, 2006 was made pursuant to a warrant, signed by State of Hawai`i Circuit Court Judge Rhonda Loo on December 12, 2006, and was based on Plaintiff's violation of his probation for his conviction for Attempted Escape in the Second Degree. While unclear, it appears that Plaintiff argues that the December 21, 2006 arrest resulted in his unlawful imprisonment because the bail set was excessive in relation to the allegedly mild

18

infraction Plaintiff committed in violating the terms of his probation.  However, since Judge Loo set the bail amount, and she is not a named defendant, Plaintiff has not brought a cognizable claim against any party directly associated with this incident or who could conceivably remedy his purported injury.

Furthermore, amending Plaintiff's complaint would be futile because Judge Loo is afforded judicial immunity.  "Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction."  Harvey v. Waldron, 210 F.3d 1008, 1012 (9th Cir. 2000) (quoting Pierson v. Ray, 386 U.S. 547, 553-54 (1967)).  Judicial immunity affords immunity from suit, not just assessment of damages.  Mireles v. Waco, 502 U.S. 9, 11 (1991) (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).  It cannot simply be "overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial."  Id. (citing Pierson, 386 U.S. at 554 ("[I]mmunity applies even when the judge is accused of acting maliciously and corruptly.")).  Rather, immunity is only overcome in two situations.  "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.  Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction."  Id. at 11-12 (citations omitted).

19

Here, Judge Loo's actions clearly do not meet either of the exceptions to overcome judicial immunity.  Setting bail amounts is an action taken within a judge's judicial capacity, and this judicial action was taken within the judge's jurisdiction.  Therefore, Plaintiff has no claim for which relief could be granted.

Therefore, this Court GRANTS Defendants' motion based on all claims arising out of the December 21, 2006 arrest and imprisonment.

D.  Qualified Immunity

As noted above, there remains a genuine issue of fact regarding the lawfulness of the August 29, 2005 arrest by Officer Takayama as it relates to the validity of the underlying warrant.  Officer Takayama alternatively argues that he is entitled to qualified immunity for § 1983 claims because he thought the warrant was valid at the time that he made the arrest.[4]

"To establish that a state official is personally liable in an action under 42 U.S.C. § 1983, a plaintiff must show that 'the official, acting under color of state law, caused the deprivation of a federal right.'"  Spoklie v. Montana, 411 F.3d 1051, 1060 (9th Cir. 2005) (quoting Hafer v. Melo, 502 U.S. 21, 25 (1991)).  As long as the official's "conduct does not violate clearly established statutory or

---

[4] Officer Takayama does not argue that he is entitled to qualified immunity for Plaintiff's State law claims of false arrest and imprisonment.

20

constitutional rights of which a reasonable person would have known," he or she has qualified immunity from civil liability under § 1983.  Id.  The following must be determined in the analysis of a qualified immunity defense:  "(1) what right has been violated; (2) whether that right was so 'clearly established' at the time of the incident that a reasonable officer would have been aware of its constitutionality; and (3) whether a reasonable public officer could have believed that the alleged conduct was lawful."  Jensen v. City of Oxnard, 145 F.3d 1078, 1085 (9th Cir. 1998), cert. denied, 525 U.S. 1016 (1998).

Indeed, it is well established that "[i]f a reasonable official could have believed that his actions were lawful, summary judgment on the basis of qualified immunity is appropriate . . . .  Only if there be a genuine issue of fact that would preclude a grant of summary judgment, should the court let the case proceed to trial."  Hemphill v. Kincheloe, 987 F.2d 589, 592-93 (9th Cir. 1993) (citations omitted); see also Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993) ("The determination of whether the facts alleged could support a reasonable belief in the existence of probable cause or reasonable suspicion is also a question of law to be determined by the court") (citations omitted).

Therefore, in determining Officer Takayama's eligibility for qualified immunity, the question is whether a reasonable public officer could have believed

that the August 29, 2005 arrest was lawful.  In support, Officer Takayama offers a

declaration stating that when he arrested plaintiff he believed that the warrant was

valid. (Takayama Decl. ¶ 5.)  Defendant Takayama, however, does not explain

what steps, if any, he took to verify the validity of the warrant.  Furthermore, the

lawfulness of the August 29, 2005 arrest hinges, at least in part, on whether the

warrant that provided it the necessary probable cause was valid.  As previously

discussed, the warrant was issued on October 13, 2004, ten months prior to the

arrest at issue here, and pertained to the charges that went to trial on February 28,

2005.  Because Defendant Takayama's declaration does not address whether he

took any steps to ensure that the warrant was valid, and in light of the previous

discussion surrounding the underlying validity of the warrant, there exists a

genuine issue of fact as to whether a reasonable officer could believe Plaintiff's

August 29, 2005 arrest was lawful.  Summary judgment is not appropriate.

E.  <u>The County and MPD</u>

Defendants argue that Plaintiff does not have enough evidence to

establish that there was inadequate training and, further, that there is no link

between this allegedly inadequate training and Plaintiff's purported injuries.

Defendants also argue that the County provides MPD officers with more than

adequate training on a variety of subjects including the use of force and proper arrest procedures.

Plaintiff disputes Defendants' claim that MPD officers receive adequate training, arguing that while Defendants provide the amount of hours spent on training for MPD officers, the Defendants fail to specifically address the amount of time spent on the use of force and proper arrest procedures, and Defendants are not entitled to summary judgment. The Court agrees.

Initially, the Court notes that Plaintiff's excessive force claims based on the August 5, 2004 and September 29, 2004 arrests were already dismissed on statute of limitations grounds. Plaintiff's only claims remaining arise out of the August 29, 2005 arrest, which Plaintiff claims was made pursuant to an invalid warrant and that the arrest was improperly effectuated.

A municipality cannot be held liable pursuant to section 1983 under a theory of respondeat superior liability. Monell v. Dep't of Social Servs. of City of N.Y., 436 U.S. 658, 691 (1978 ) ("a municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.") Instead, a municipality can only be held liable for unconstitutional acts where the acts were "(1) the direct result of inadequate police training or supervision; (2) the product of an officially

adopted policy statement, ordinance, regulation, or decision; or (3) illustrative of a custom which is so permanent and well settled to constitute a custom or usage with the force of law." <u>Sunn v. City & County of Honolulu</u>, 852 F. Supp. 903, 908-09 (D. Haw. 1994).

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

<u>Bd. of County Com'rs of Bryan County, Okl. v. Brown</u>, 520 U.S. 397, 404 (1997).

Where a claim is based upon a failure to properly train police officers, liability may be imposed "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." <u>Price v. Sery</u>, 513 F.3d 962, 973 (9th Cir. 2008) (citations omitted). To prove deliberate indifference, a plaintiff must demonstrate that the county made a conscious or deliberate choice "to risk a 'likely' violation of constitutional rights." <u>Id.</u> "[This] standard is objective in that it does permit a fact finder to infer 'constructive' notice of the risk where it was 'obvious' – but this is another way of saying that there needs to be some evidence that tends to show a conscious

choice." <u>Id.</u>  "'[D]eliberate indifference' is a stringent standard of fault, requiring

proof that a municipal actor disregarded a known or obvious consequence of his

action." <u>Bd. of County Com'rs of Bryan County</u>, 520 U.S. at 410.

> The Supreme Court has explained that
>
> a deficient training "program," [is] necessarily intended
> to apply over time to multiple employees. Existence of a
> "program" makes proof of fault and causation at least
> possible in an inadequate training case.  If a program
> does not prevent constitutional violations, municipal
> decisionmakers may eventually be put on notice that a
> new program is called for.  Their continued adherence to
> an approach that they know or should know has failed to
> prevent tortious conduct by employees may establish the
> conscious disregard for the consequences of their action
> – the "deliberate indifference" – necessary to trigger
> municipal liability.

<u>Id.</u> at 407 (citation omitted).

Defendant Chief Phillips' declaration, while stating that the training

program for police officers involves approximately 1,144 hours of classroom

training and 624 hours of field training, (Phillips Decl., Ex. P at ¶ 4, attached to

Defs' MSJ.), does not address training with respect to determining the validity of a

warrant and the proper procedures of arrest.  This vague recounting of MPD officer

training says nothing about the specific topics at issue here and, thus, fails to

establish that there is no genuine issue of fact on the question of inadequate

training.  In addition, Plaintiff asserts in his Supplement that his efforts to take

depositions of various Defendants, including Chief Phillips, have been frustrated.

It is premature for this Court to grant summary judgment on the training issue

simply because, as Defendants claim, Plaintiff does not have any evidence.  As

discussed below, this Court is construing Plaintiff's Supplement as a Rule 56(f)

request to take a deposition from Chief Phillips regarding the training of MPD

officers.  In light of the foregoing, this Court DENIES Defendants' MSJ with

respect to Plaintiff's failure to train claims.

## II.  Motion to Strike

Local Rule 7.4 allows for the filing of an opposition and reply to a

motion and no further or supplemental briefings can be submitted unless given

leave by the court.  See Hawai`i Disability Rights Center v. Cheung, No. 06-00605,

2007 WL 2874842, at *1 (D. Haw., September 27, 2007) ("Insofar as Defendants

did not obtain leave of court to file the surreply, the Court will not consider it.");

Garces v. Degadeo, No. 1:006-cv-01038, 2008 WL 1970654, at *1 (E.D. Cal. May

5, 2008); Kanvick v. City of Reno, No. 3:06-CV-00058, 2008 WL 873085, at *1

(D. Nev. March 27, 2008).

Plaintiff's Supplement addresses an apparent discovery dispute

concerning depositions, not the MSJ discussed in Section I.  In light of the content

of the Supplement and Plaintiff's <u>pro</u> <u>se</u> status, this Court construes the

Supplement as a Rule 56(f) request for continuance to depose Chief Phillips about

MPD Officer training, specifically as this training relates to proper arrest

procedures and identifying the validity of a warrant.  This ruling affords Plaintiff

the opportunity to depose Chief Phillips prior to the discovery cut off date and,

resultingly, provides this Court with additional evidence on a pending claim in this

matter.  Accordingly, this Court DENIES Defendants' Motion to Strike.

<u>CONCLUSION</u>

For the reasons stated above, the Court GRANTS IN PART and

DENIES IN PART Defendants' MSJ and DENIES Defendants' Motion to Strike.

The Court DISMISSES Defendants Nelson Johnson, Thomas Martins, and Brent

K. Osterstock from this action.  As they do not move for summary judgment here,

Chief Phillips and Mayor Arakawa remain active parties in this action.  The

County, MPD, and Officer Takayama also remain in this action because there are

still pending claims against them.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 2, 2008.

_____
David Alan Ezra
United States District Judge

John P. Dunbar v. County of Maui et al., CV No. 07-00107 DAE-BMK; ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS COUNTY OF
MAUI, MAUI POLICE DEPARTMENT, NELSON JOHNSON, THOMAS
MARTINS, PAUL TAKAYAMA, ALAN ARAKAWA, THOMAS PHILLIPS,
AND BRENT K. OSTERSTOCK'S MOTION FOR SUMMARY JUDGMENT;
ORDER DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S
SUPPLEMENT TO HIS MOTION